**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **EMERSON ELECTRIC CO.,** | |
| **Plaintiff,** | |
| **v.** | **Case No.** |
| **ANAHEIM MANUFACTURING CO.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## COMPLAINT

Plaintiff Emerson Electric Co. ("Emerson"), by and through its attorneys, hereby complains against Defendant Anaheim Manufacturing Company ("Anaheim") as follows:

## NATURE OF THE SUIT

1.      This cases arises from the illegal and unfair acts of Anaheim concerning food waste disposers and components thereof (collectively the "Accused Disposers") that Anaheim is having made, importing and selling food waste disposers that intentionally and deceptively copy the appearance of two popular series of Emerson food waste disposers known as the Evolution® and Badger® series food waste disposers.

2.      The Accused Disposers imported and sold by Respondent copy the unique, well-known and distinctive look of Emerson's Evolution® and Badger® series food waste disposers, from the tri-lobe shape of the upper sink mount assembly down to the shape of the external shell of each product, in violation of 15 U.S.C. § 1125 (a) and (b). The Accused Disposers (referred to separately herein as the "Accused Evolution Copies" and the "Accused Badger Copies") infringe

1

Emerson's trade dress rights that protect the unique appearance of its popular food waste disposers (collectively "the Protected Trade Dress").

3.      The Accused Evolution Copy, moreover, infringes Emerson's U.S. Design Patent No. D535,850, in violation of the patent laws of the United States, Title 35 of the United States Code.

4.      Respondent's acts constitute unlawful passing off, under 15 U.S.C. § 1125 (a) and (b), of the Accused Disposers as food waste disposers manufactured and sold by Emerson.  The Accused Disposers not only look like Emerson's food waste disposers, but are also designed to attach to authentic Emerson sink mount assemblies bearing Emerson's famous INSINKERATOR trademarks, generating confusion in the marketplace as to the source of the goods.

5.      On information and belief, Anaheim has intentionally and deliberately configured the Accused Disposers so that they can and will be attached to authentic Emerson sink mount assemblies bearing Emerson's famous INSINKERATOR trademarks, including Reg. No. 2,518,010, in order to cause confusion in the marketplace and trade on the goodwill of Emerson's famous marks.   On information and belief, Anaheim encourages customers to promote attachment of the Accused Disposers to existing sink mount assemblies bearing Emerson's famous INSINKERATOR trademarks, in violation of the U.S. Trademark and Dilution laws, including 15 U.S.C. § 1114 and 15 U.S.C. § 1125 (c).

6.      These and other Counts of unlawful and wrongful conduct are plead and described in more detail below.

## THE PARTIES

7.    Emerson is a Missouri corporation with its principal place of business located at 8000 West Florissant Avenue, St. Louis Missouri 63136.  The business of Emerson that is relevant to this action concerns manufacture and sale of food waste disposers by Emerson's InSinkErator business unit, located in Racine, Wisconsin.  InSinkErator manufactures and sells food waste disposers, including the Evolution® and the Badger® series food waste disposers.

8.    Anaheim is, upon information and belief, a subsidiary of Anafree Holdings, Inc., and is organized under the laws of Delaware, with its principal place of business at 2680 Orbiter Street, Brea, California  92821.

## JURISDICTION AND VENUE

9.    This Court has exclusive jurisdiction over the subject matter of Emerson's patent infringement claims and Lanham Act claims pursuant to 28 U.S.C. §§1331 and 1338(a), because this action arises under the patent laws of the United States, 35 U.S.C. §1, *et seq.*, and the Lanham Act, 15 U.S.C. §1051, *et seq.*

10.    This Court has supplemental jurisdiction over state law claims under 28 U.S.C. §1367.

11.    This Court has personal jurisdiction pursuant to Fed. R. Civ. P. 4(e) and Mo. Rev.Stat. §506.500, which operate to effect "long-arm" jurisdiction over Defendant due to its contacts with this judicial district, including its acts of patent infringement, unfair competition, inducement of trademark infringement, trade dress infringement, and trademark dilution in this district.  Defendant is subject to personal jurisdiction in this Court, and defendant transacts business in this district, at least by offering to sell or selling infringing food waste disposers to

Missouri customers in this judicial district and through Internet websites that are designed to reach Missouri customers and are, in fact, used by customers in this judicial district.

12.     Venue is proper in this jurisdiction under 28 U.S.C. §§1391 and 1400(b).

## EMERSON'S INTELLECTUAL PROPERTY

### U.S. Patent No. D535,850

13.     United States Patent No. D535,850 ("the '850 Patent" or the "Asserted Patent"), entitled "Food Waste Disposer Trim Shell," issued on January 30, 2007, and names James Robert Patterson, Thomas M. Garza, Sr., Scott W. Anderson, David MacNair, Joshua P. Malik, Eric Joseph Schultz, James Douglas Wilson, Kevin Robert Young, and Jo Frances Wollschlaeger as inventors.  A copy of the '850 Patent is attached to the Complaint as Exhibit 1.

14.     Emerson became the owner of the '850 Patent by valid assignment of the entire right, title, and interest in the '850 Patent, made on December 27, 2005, and recorded on April 7, 2006.  A copy of the assignment is attached as Exhibit 2.

15.     The '850 Patent is valid, enforceable, and is currently in full force and effect.

16.     The '850 Patent claims a novel, ornamental design for a food waste disposer trim shell as shown in Figure 1 from the '850 Patent to the right.

17.     As shown in the '850 Patent, the design includes a greater circumference cylinder above a small circumference cylinder with rectangular decorative set-off surrounding the ports on the rear of the food waste disposer.  At the time these designs were conceived, no prior art existed having the shape and design facets (including shape of the upper cylinder sections, the proportions of the cylinder sections and the decorative set-off around the ports) of the patented design.

18.     The design of the '850 Patent creates a unique ornamental effect.

4

### The Protected Trade Dress

19.     For almost a century, InSinkErator has been and is in the business of developing and manufacturing food waste disposers in the United States.  From the invention of the food waste disposer by John W. Hammes, founder of InSinkErator, in 1927, InSinkErator has driven advancements in the performance and brand recognition of food waste disposers in the United States.  Emerson acquired InSinkErator in 1968, and has continued this strong commitment to excellence and recognition in the food waste disposer segment.

### A.  The Badger Trade Dress

20.     In 1999, Emerson, through its InSinkErator business unit, introduced its Badger® series food waste disposers having the trade dress described below.

21.     The Badger® series food waste disposer trade dress (referred to herein as the "Badger Trade Dress") includes a cylindrical housing with an upper conical portion, a middle portion having a unique arrangement of vertical and horizontal ribs, and a bottom cylindrical section.  It also includes a tri-lobe sink mount assembly at the top.  An example Badger® series food waste disposer is shown in the figure below.



*Badger® Series Food Waste Disposer*

22.     Emerson has manufactured and sold food waste disposers utilizing the Badger Trade Dress continuously and exclusively since its introduction in 1999.  More than 45 million

food waste disposers utilizing the Badger Trade Dress have been sold to date.  Emerson is not aware of any food waste disposer that has utilized a look like the Badger Trade Dress prior to the Respondent selling the Accused Badger Copies.

23.     Since its introduction, Emerson has expended and continues to expend substantial time, money, and other resources and effort to develop and maintain the goodwill that has come to be associated with its Badger® series food waste disposer incorporating the unique and recognizable Badger Trade Dress.

24.     Emerson has invested millions of dollars in advertising and promoting its Badger® series food waste disposers, including advertising directed to the unique and non-functional aspects of the appearance of the Badger® series food waste disposers.

25.     As a result of Emerson's efforts, the Badger Trade Dress has come to be, and now is, well and favorably known to the public as being associated with the high quality products of Emerson's InSinkErator business unit.

26.     Emerson has built up and now owns valuable goodwill that is represented by its distinctive Badger Trade Dress.

**B.  The Evolution Trade Dress**

27.     In 2006, Emerson, through its InSinkErator business unit, introduced the Evolution® series food waste disposers.  The Evolution® series food waste disposers were designed to offer improved performance over the industry's standard food waste disposers, including the Badger® series food waste disposers.  The improved performance is dictated by the internal components of the food waste disposers and is not affected by the appearance of the food waste disposers.

28.     The Evolution® series food waste disposer trade dress (referred to herein as the "Evolution Trade Dress") includes a housing with an upper cylindrical portion having a larger

6

circumference than the bottom cylindrical portion, and a rectangular decorative set-off surrounding the ports on the rear of the food waste disposer.  An example Evolution® series food waste disposer is shown in the figure below.



*Evolution® Series Food Waste Disposer*

29.     Emerson has manufactured and sold food waste disposers utilizing the Evolution Trade Dress continuously and exclusively since its introduction in 2006.  More than 4 million food waste disposers utilizing the Evolution Trade Dress have been sold to date.  Emerson is not aware of any food waste disposer that has utilized an appearance like the Evolution Trade Dress prior to the Respondent selling the Accused Evolution Copies.

30.     More than 4 million Evolution® series food waste disposers have been sold to date, all utilizing the unique Evolution Trade Dress described and shown above.

31.     Since its introduction in 2006, Emerson has expended and continues to expend substantial time, money, and other resources and effort to develop and maintain the goodwill that has come to be associated with the Evolution® series food waste disposers incorporating the unique and recognizable trade dress.

32.     Emerson has invested millions of dollars in advertising and promoting its Evolution® series food waste disposers, including advertising directed to the unique and non-functional aspects of the appearance of the Evolution® series food waste disposers.

33.     As a result of Emerson's efforts, the Evolution Trade Dress has come to be, and now is, well and favorably known to the public as being associated with the high quality products of Emerson's InSinkErator business unit.

34.     Emerson has built up and now owns valuable goodwill that is represented by its distinctive Evolution Trade Dress.

### C.  The Tri-Lobe Sink Mount Assembly

35.     In 1962, InSinkErator developed and introduced a new sink mount assembly. This assembly couples to the kitchen sink and includes on the surface a decorative flange that resides in the sink and displays the famous INSINKERATOR trademarks.  Thus, the consumer can readily see that an INSINKERATOR® food waste disposer is under the sink.  This sink mount assembly also includes a bottom structure to permit an Emerson food waste disposer to be mounted and un-mounted by turning the food waste disposer relative to the sink mount assembly, in the space that is typically unseen under the kitchen sink.

36.     Both the Badger® and Evolution® series food waste disposers were designed to attach to this long-used Emerson sink mount assembly (shown in the upper portion of the above photos and in an enlarged photo at paragraph 37).

37.     Emerson's sink mount assembly includes a distinctive tri-lobe appearance at the top of the assembly, which is unrelated to the bottom locking mechanism of the sink mount assembly.  Emerson, through its InSinkErator business unit, has used this distinctive tri-lobe design exclusively and continuously since its introduction.  This distinctive tri-lobe appearance of the sink mount assembly is shown in the figure below.

8



*Emerson's Tri-lobe Sink Mount Assembly*

38.    Emerson asserts trademark rights in the unique appearance of its tri-lobe sink mount assembly and makes the public aware of these rights in its marketing materials and by prominently marking the tri-lobe sink mount assembly with the $^{TM}$ designator.

39.    Because of Emerson's promotion and long use of the tri-lobe sink mount assembly, plumbers and other consumers have come to recognize the appearance, which is typically displayed in stores and shown on product packaging, as a source indicator for Emerson's InSinkErator business unit.

40.    Through its InSinkErator business unit, the tri-lobe sink mount assembly has been sold with all of Emerson's Badger® and Evolution® series food waste disposers, and the tri-lobe look of the sink mount assembly is an aspect of the Protected Trade Dress discussed above.

## THE INSINKERATOR TRADEMARKS

41.    Emerson, through its InSinkErator business unit, has long been in the business of manufacturing and selling food waste disposers under the INSINKERATOR trademarks.

42.    Emerson has been issued a federal trademark registration for INSINKERATOR (U.S. Reg. No. 2,518,010) (hereinafter referred to as the "Registered INSINKERATOR Trademark").

43.    The Registered INSINKERATOR Trademark is in full force and effect, unrevoked and uncancelled.  A copy of the Certificate of Registration for the Registered Trademark is attached hereto as Exhibit 3.

9

44.     Emerson is the owner of U.S. Reg. No. 2,518,010.

45.     The Registered INSINKERATOR Trademark shown in Exhibit 3 has attained incontestable status under §15 of the Lanham Act, 15 U.S.C. §1065.

46.     Emerson also has common law rights in INSINKERATOR as a result of Emerson's long and uninterrupted use of its trademarks (hereinafter referred to as the "Common Law Trademarks") through its InSinkErator business unit.  (The Registered INSINKERATOR Trademark and Common Law Trademarks are herein collectively referred to as the "INSINKERATOR trademarks").

47.      During the last 70 plus years, Emerson's InSinkErator business unit has built and sold nearly 100 million food waste disposers under its INSINKERATOR trademarks.  Based on an estimated 10 year life of each food waste disposer, approximately 50 million of these food waste disposers are currently installed in the United States.

48.     Emerson has and continues to expend substantial time, money, and other resources and effort to develop and maintain the goodwill that has come to be associated with the products it sells under its INSINKERATOR trademarks.

49.     Emerson has invested millions of dollars in advertising and promoting its products under the INSINKERATOR trademarks throughout the United States.

50.     As a result of Emerson's efforts, the INSINKERATOR trademarks have come to be, and now are, well and favorably known to the public as being associated with the high quality products of Emerson's InSinkErator business unit.   Emerson's INSINKERATOR trademarks are famous.

51.     Emerson has built up and now owns valuable goodwill that is represented by its distinctive and famous INSINKERATOR trademarks.

## ANAHEIM'S WRONGFUL CONDUCT

52.    On information and belief, Anaheim has, for many years and continuing through today, made and sold a non-accused line of food waste disposers under various house brands, including Waste King™, Sink Master™ and Whirlaway™.  These Anaheim food waste disposers are known to include several different shaped housings, as shown below.  Moreover, these food waste disposers are sold with a sink mount assembly that does *not* incorporate Emerson's unique tri-lobe appearance and does not couple with Emerson's food waste disposers (and vice versa).



*Exemplary Waste King^{TM} Food Waste Disposers Model Nos. 111, 2600, 8000TC, 9920*

53.    On information and belief, more recently, and while still selling the above-described food waste disposers, Anaheim began having manufactured, importing and selling food waste disposers that copy the look of Emerson's Badger® and Evolution® series food waste disposers and that connect to Emerson's tri-lobe sink mount assembly.  On information and belief, Anaheim has sold and offered for sale the Accused Evolution Copies and Accused Badger Copies exclusively under private label, and not under its house brands.

54.    On information and belief, Anaheim's private label food waste disposers are known variously at retail as KitchenEater, Barracuda™, Dayton®, and Plumber Friendly, as shown in Exhibit 4.

11

55.     A photo of one of the Accused Badger Copies is shown in the figure below.



*Example of Accused Badger Copy*

56.     A photo of one of the Accused Evolution Copies is shown in the figure below.



*Example of Accused Evolution Copy*

57.     On information and belief, Anaheim has, without any need or justification, copied the unique tri-lobe look of Emerson's sink mount assembly and outer shell of the food waste disposers, and designed the Accused Disposers so that they connect to Emerson's installed sink mount assemblies bearing Emerson's proprietary trademarks, all in an effort to make Anaheim's products appear to be Emerson's products.   Indeed, prior to copying the tri-lobe look, Anaheim had sold food waste disposers for decades with sink mount assemblies that look different from Emerson's sink mount assemblies and work just as well.  Competitors in the market have long used competitive sink mount assemblies that do not use the unique tri-lobe appearance of

Emerson's sink mount assembly and have long made competitive food waste disposers that do not connect to Emerson's sink mount assembly, which bears its trademarks.

58. On information and belief, the Accused Disposers, consist of the internal components of the above, non-accused Waste King™ food waste disposers but with a different outer shell that mimics either the Badger® or the Evolution® series food waste disposers, and includes a tri-lobe sink mount assembly having the same or similar appearance as Emerson's tri-lobe sink mount assembly. These food waste disposers also attach to authentic Emerson sink mount assemblies bearing the INSINKERATOR trademarks.

59. For comparison, the interior of a Waste King™ food waste disposer is illustrated below left, next to the interior of an Accused Disposer below right.



*Waste King™ Food Waste Disposer Interior*          *Accused Evolution Copy Interior*

60. On information and belief, Anaheim sells the Accused Disposers to independent distributors/retailers, under various private labels.

61. On information and belief, Anaheim sells and/or directs its distributors to sell, the Accused Evolution Copies at a higher price point than the Accused Badger Copies, leading to the impression, like with Emerson's food waste disposers, that the Accused Evolution Copies have increased performance capabilities over the Accused Badger Copies, when, in fact, the inner

workings of the Accused Disposers are substantially the same inner workings as Waste King™ food waste disposers.

62.     On information and belief, Anaheim advertises and/or directs its distributors to advertise that the Accused Disposers "retro-fit" with existing sink mount assemblies, knowing and intending that purchasers will connect the Accused Disposers to authentic Emerson sink mount assemblies bearing Emerson's famous INSINKERATOR trademarks.

## COUNT I

## FEDERAL DESIGN PATENT INFRINGEMENT

63.     Emerson incorporates by reference all of the averments set forth in Paragraphs 1-62, inclusive, with the same effect as though fully rewritten in this Count.

64.     On information and belief, Respondent Anaheim causes to be manufactured, imports and/or sells after importation in the United States Accused Evolution Copies that copy the design of, and infringe, the Asserted Patent.

65.     A photograph of one of the Accused Evolution Copies is reproduced below next to Figure 1 of the Asserted Patent.  As evidenced by the depiction below, in the eye of the ordinary observer, the Accused Evolution Copy is substantially identical to the design claimed in the Asserted Patent.




*The Accused Evolution Copy*                    *Fig. 1 from the '850 Patent*

66.     On information and belief, Respondent Anaheim imports and then offers to sell and/or sells the Accused Evolution Copies to distributors/retailers for further re-sale in the United States under names such as KitchenEater, Barracuda™, Dayton®, and Plumber Friendly. *See* Exhibit 4.

67.     Anaheim's acts are causing substantial injury and threaten to cause substantial injury to Emerson.  Emerson has no adequate remedy at law and said acts will continue unless restrained by this Court.

<u>**COUNT II**</u>

**FEDERAL TRADE DRESS INFRINGEMENT**
<u>**(Infringement of the Badger Trade Dress)**</u>

68.     Emerson incorporates by reference all of the averments set forth in Paragraphs 1-67, inclusive, with the same effect as though fully rewritten in this Count.

69.     On information and belief, Anaheim causes to be manufactured, sells for importation, imports, and/or sells after importation in the United States copies of Emerson's Badger® series food waste disposers.

70.     As shown below, the appearance of the Accused Badger Copies is virtually identical to the distinctive appearance of Emerson's Badger® series food waste disposer.

     

*Badger® Series Disposer*                        *Example Accused Badger Copies*

15

71.     For years, companies have competed against Emerson in this industry without copying the Badger Trade Dress.  It is the internal components of the food waste disposers that affect performance, and *not* its outward appearance.

72.     To Emerson's knowledge, before Anaheim's introduction of the Accused Badger Copies, no other company offered a food waste disposer that copied the distinctive appearance of Emerson's Badger® series food waste disposer.

73.     As alleged in paragraphs 20-26 above, Emerson has spent significant time, money and effort to promote the Badger® series food waste disposer, and as a result of these efforts spanning more than 13 years, the Badger Trade Dress has acquired distinctiveness as a source identifier of the product.

74.     The shape of the outer shell, including the upper conical portion, vertical and horizontal ribs, and cylindrical lower portion, as well as, the tri-lobe shape of the sink mount assembly, are purely aesthetic and non-functional.

75.     Anaheim's Accused Badger Copies are likely to cause confusion as to the source of the products.

76.     Plumbers, contractors and other consumers of food waste disposers are familiar with and rely on the distinctive look of the products as a source identifier.  The Badger Trade Dress (including both the shape of the outer shell and the tri-lobe shape of the sink mount assembly) is well known as a source identifier of food waste disposers sold by Emerson's InSinkErator business unit.

77.     Anaheim's copying of the Badger Trade Dress is likely to cause consumers to believe that the private label products made and sold by Anaheim and its re-seller customers are

products made by Emerson's InSinkErator business unit, and not products made in China for, and at the direction of, Anaheim.

78.     In particular, plumbers or other consumers, upon seeing the Accused Badger Copy on display or on product packaging in stores may mistakenly purchase the Accused Badger Copy believing it to be a product manufactured and sold by Emerson's InSinkErator business unit.

79.     Further, upon encountering an installed Accused Badger Copy, plumbers, home owners or others may wrongfully associate the Accused Badger Copy with Emerson, and mistakenly ascribe defects or problems with the Accused Badger Copy to the manufacturing of Emerson, thereby harming Emerson's reputation in the industry.

80.     Anaheim's acts are causing substantial injury and threaten to cause substantial injury to Emerson's trade, business reputation, prestige and goodwill.  Emerson has no adequate remedy at law and said acts will continue unless restrained by this Court.

## COUNT III

### FEDERAL TRADE DRESS INFRINGEMENT
### (Infringement of the Evolution Trade Dress)

81.     Emerson incorporates by reference all of the averments set forth in Paragraphs 1-80, inclusive, with the same effect as though fully rewritten in this Count.

82.     On information and belief, Anaheim causes to be manufactured, sells for importation, imports, and/or sells after importation in the United States copies of Emerson's Evolution® series food waste disposers.

83.     As shown below, the appearance of the Accused Evolution Copies is virtually identical to the distinctive appearance of Emerson's Evolution® series food waste disposer.

     

*Evolution® Series Disposer*                    *Example Accused Evolution Copy*

84.     For years, companies have competed against Emerson in this industry without copying the Evolution Trade Dress.  It is the internal components of the food waste disposers that affect performance, and *not* its outward appearance.

85.     To Emerson's knowledge, before Anaheim's introduction of the Accused Evolution Copies, no other company offered a food waste disposer that copied the distinctive appearance of Emerson's Evolution® series food waste disposer.

86.     As alleged in paragraphs 27-34 above, Emerson has spent significant time, money and effort to promote the Evolution® series food waste disposer, and as a result of these efforts spanning approximately six years, the Evolution Trade Dress has acquired distinctiveness as a source identifier of the product.

87.     The shape of the outer shell, including the upper cylindrical portion having a larger circumference than the bottom cylindrical portion, and the rectangular decorative set-off surrounding the ports on the rear of the food waste disposer, as well as, the tri-lobe shape of the sink mount assembly are purely aesthetic and non-functional.

88.     Anaheim's Accused Evolution Copies are likely to cause confusion as to the source of the products.

18

89.     Plumbers, contractors and other consumers are familiar with and rely on the distinctive look of the products as a source identifier.  The Evolution Trade Dress (including both the configuration of the outer shell, with the decorative rectangular set off on the rear, and the tri-lobe shape of the sink mount assembly) is well known as a source identifier of high end food waste disposers sold by Emerson's InSinkErator business unit.

90.     Anaheim's copying of the Evolution Trade Dress is likely to cause consumers to believe that the private label products are products made by Emerson's InSinkErator business unit, and not products made in China for, and at the direction of, Anaheim.

91.     In particular, plumbers or other consumers, upon seeing the Accused Evolution Copy on display or on product packaging in stores may mistakenly purchase the Accused Evolution Copy believing it to be a product manufactured and sold by Emerson's InSinkErator business unit.

92.     Further, upon encountering an installed Accused Evolution Copy, plumbers, home owners or others may wrongfully associate the Accused Evolution Copy with Emerson, and mistakenly ascribe defects or problems with the Accused Evolution Copy to the manufacturing of Emerson, thereby harming Emerson's reputation in the industry.

93.     Anaheim's acts are causing substantial injury and threaten to cause substantial injury to Emerson's trade, business reputation, prestige and goodwill.  Emerson has no adequate remedy at law and said acts will continue unless restrained by this Court.

## COUNT IV

## FEDERAL UNFAIR COMPETITION

94.     Emerson incorporates by reference all of the averments set forth in Paragraphs 1-93, inclusive, with the same effect as though fully rewritten in this Count.

19

95.     As indicated above, on information and belief, Anaheim causes to be manufactured, sells for importation, imports and sells within the United States, in commerce, infringing food waste disposers that copy the look of Emerson's well-known food waste disposers.

96.     On information and belief, Anaheim has also configured or caused to be configured the Accused Disposers to couple to authentic Emerson sink mount assemblies which bear the INSINKERATOR trademarks.

97.     These actions by Anaheim, which are intentionally deceptive, constitute illegal passing off of its food waste disposers for the food waste disposers of Emerson in violation of the Lanham Act, 15 U.S.C. § 1125 (a) and (b).

98.     As shown above, Anaheim competes in the United States with its non-accused Waste King™ and other house brand food waste disposers *without* copying Emerson's Protected Trade Dress and *without* configuring its food waste disposers to couple to Emerson's sink mount assemblies.   On information and belief, its decision, therefore, to private label food waste disposers that look like Emerson food waste disposers and couple to Emerson's sink mount assemblies was made knowingly, intentionally and deceptively for the purpose of trading on the goodwill built by Emerson, confusing consumers as to the source of the food waste disposers, and inducing the purchase of the Accused Disposers instead of Emerson food waste disposers.

99.     Anaheim's adoption of the Accused Evolution Copies and the Accused Badger Copies configured to couple to Emerson's sink mount assemblies is likely to cause confusion in the marketplace as to the source of the products, and likely to harm the reputation of Emerson and/or its customers.

100.    Not only are consumers likely to be confused at the time of purchase as to the source of the food waste disposers, subsequent consumers encountering an Accused Disposer connected to an Emerson sink mount assembly bearing the INSINKERATOR trademarks are likely to be confused and wrongly believe that the food waste disposer is a high quality product produced by Emerson's InSinkErator business unit.  This is likely to lead these subsequent consumers wrongfully to associate any product failure with Emerson and to cause subsequent consumers not to purchase Emerson food waste disposers in the future.

101.    Anaheim's acts are causing substantial injury and threaten to cause substantial injury to Emerson's trade, business reputation, prestige and goodwill.  Emerson has no adequate remedy at law and said acts will continue unless restrained by this Court.

## COUNT V

## INDUCEMENT OF FEDERAL TRADEMARK INFRINGEMENT

102.    Emerson incorporates by reference all of the averments set forth in Paragraphs 1-101, inclusive, with the same effect as though fully rewritten in this Count.

**103.**    Anaheim, without the consent of Emerson, is inducing use of Emerson's INSINKERATOR trademarks in a manner that is likely to cause confusion in commerce, or to cause mistake in commerce as to the sponsorship or association of the Accused Disposers, in violation of 15 U.S.C. §§1114(1) and 1125(a)(1)(A).

104.    On information and belief, Anaheim has configured or caused to be configured the Accused Disposers to couple to authentic Emerson sink mount assemblies which bear the INSINKERATOR trademarks.

105.    On information and belief, Anaheim advertises, and/or directs its distributors to advertise, that the Accused Disposers "retro-fit" with existing sink mount assemblies, as shown in the photo below.



*Barracuda<sup>TM</sup> Accused Evolution Copy Packaging*

106. On information and belief, Anaheim has taken these actions knowing and intending that purchasers will connect the Accused Disposers to authentic Emerson sink mount assemblies bearing Emerson's famous INSINKERATOR trademarks.

107. On information and belief, Anaheim knows that such practices will create confusion in the marketplace, when, for example, a consumer sees an INSINKERATOR trademark on the decorative sink flange, and believes, wrongfully, that the food waste disposer connected under the sink is also a product of Emerson's InSinkErator business unit.

108. Anaheim's infringing use of Emerson's INSINKERATOR trademarks has been deliberate and willful, and has been committed with the intent to cause confusion, mistake, and to deceive and defraud the public, as well as harm the goodwill associated with Emerson's INSINKERATOR trademarks.

109.    Anaheim's acts are causing substantial injury and threaten to cause substantial injury to Emerson's trade, business reputation, prestige and goodwill.  Emerson has no adequate remedy at law and said acts will continue unless restrained by this Court.

## COUNT VI

## FEDERAL TRADEMARK DILUTION

110.    Emerson incorporates by reference all of the averments set forth in Paragraphs 1-109, inclusive, with the same effect as though fully rewritten in this Count.

111.    Emerson's INSINKERATOR trademarks are famous as that term is used in 15 U.S.C. §§1125(c)(1) and 1125(c)(2)(A) as a result of its long and continuous practice of displaying the INSINKERATOR trademarks on the decorative sink flange of millions of food waste disposers, and also because of, among other things, the following factors:

- the inherent and acquired distinctiveness of Emerson's INSINKERATOR trademarks;

- the wide recognition by the general consuming public of Emerson's INSINKERATOR trademarks;

- the duration and extent of Emerson's use of its INSINKERATOR trademarks;

- Emerson's use of its INSINKERATOR trademarks in connection with various products, and in particular, food waste disposers;

- the duration and extent of Emerson's advertising and promotion of its INSINKERATOR trademarks;

- the geographic area in which Emerson, through its InSinkErator business unit, has sold and advertised food waste disposers and other products featuring Emerson's INSINKERATOR trademarks;

23

- the channels of trade through which Emerson markets its products featuring its INSINKERATOR trademarks;

- the extent of actual recognition of Emerson's INSINKERATOR trademarks; and

- the federal registration of the Registered INSINKERATOR Trademark on the Principal Register.

112.    Anaheim, without the consent of Emerson, is facilitating and encouraging Emerson's INSINKERATOR trademarks to be connected to food waste disposers that are not made and sold by Emerson, thereby misrepresenting the nature, characteristics, and qualities of Emerson's INSINKERATOR brand food waste disposers.

113.    Anaheim's acts, which occurred after Emerson's INSINKERATOR trademarks became famous, have been willful and deliberate, are likely to cause and/or are intended to cause dilution, blurring, and/or tarnishment and to impair the distinctiveness of Emerson's famous INSINKERATOR trademarks, and thus constitute a violation of 15 U.S.C. §1125(c).

114.    Anaheim's acts are causing substantial injury to Emerson's trade, business reputation, prestige and goodwill. Emerson has no adequate remedy at law and said acts will continue unless restrained by this Court.

## COUNT VII

### COMMON LAW UNFAIR COMPETITION
### IN VIOLATION OF MISSOURI LAW

115.    Emerson incorporates by reference all of the averments set forth in Paragraphs 1-114, inclusive, with the same effect as though fully rewritten in this Count.

116.    Anaheim, without the consent of Emerson, is causing to be manufactured, importing and selling within the United States infringing food waste disposers that copy the look

of Emerson's well-known food waste disposers, and that are also configured to couple to authentic Emerson sink mount assemblies which bear the INSINKERATOR trademarks.

117.   As shown above, Anaheim has no need to copy the unique look of Emerson's disposers and could compete in the marketplace without configuring its food waste disposers to couple to Emerson's sink mount assemblies.  On information and belief, Anaheim's decision, to private label food waste disposers that look like Emerson food waste disposers and couple to Emerson's sink mount assemblies was made knowingly, intentionally and deceptively for the purpose of trading on the goodwill built by Emerson, confusing consumers as to the source of the food waste disposers, and inducing the purchase of the Accused Disposers instead of Emerson food waste disposers.

118.   Anaheim's adoption of the Accused Evolution Copies and the Accused Badger Copies configured to couple to Emerson's sink mount assemblies is likely to cause confusion in the marketplace as to the source of the products, and likely to harm the reputation of Emerson and/or its customers.

119.   Not only are consumers likely to be confused at the time of purchase as to the source of the food waste disposers, subsequent consumers encountering an Accused Disposer connected to an Emerson sink mount assembly bearing the INSINKERATOR trademarks are likely to be confused and wrongly believe that the food waste disposer is a high quality product produced by Emerson's InSinkErator business unit.  This is likely to lead these subsequent consumers wrongfully to associate any product failure with Emerson and to cause subsequent consumers not to purchase Emerson food waste disposers in the future.

120.   On information and belief Anaheim is also pricing the Accused Disposers in such a way as to underprice, but mimic the pricing disparity between, Emerson's higher performance

and higher priced Evolution® series disposers and lesser priced lesser performance Badger® series disposers. These actions not only erode Emerson's prices, but also falsely lead consumers to believe that there is a performance difference between the Accused Disposers, when in fact they contain the same or similar internal components as the Waste King® brand disposers offered by Anaheim.

121.   Anaheim's acts, as set forth above, constitute unfair competition under the common law of the State of Missouri.

122.   Anaheim's acts are causing irreparable injury to Emerson's trade, business reputation, prestige, and goodwill. Emerson has no adequate remedy at law and said acts will continue unless restrained by this Court.

**COUNT VIII**

**INDUCEMENT OF COMMON LAW TRADEMARK INFRINGEMENT**

123.   Emerson incorporates by reference all of the averments set forth in Paragraphs 1-122, inclusive, with the same effect as though fully rewritten in this Count.

124.   Anaheim, without the consent of Emerson, is inducing use of Emerson's INSINKERATOR trademarks in a manner that is likely to cause confusion, or to cause mistake as to the sponsorship or association of the Accused Disposers, in violation of Missouri common law.

125.   On information and belief, Anaheim has configured or caused to be configured the Accused Disposers to couple to authentic Emerson sink mount assemblies which bear the INSINKERATOR trademarks.

126.   On information and belief, Anaheim advertises, and/or directs its distributors to advertise, that the Accused Disposers "retro-fit" with existing sink mount assemblies.

127.   On information and belief, Anaheim has taken these actions knowing and intending that purchasers will connect the Accused Disposers to authentic Emerson sink mount assemblies bearing Emerson's famous INSINKERATOR trademarks.

128.   On information and belief, Anaheim knows that such practices will create confusion in the marketplace, when, for example, a consumer sees an INSINKERATOR trademark on the decorative sink flange, and believes, wrongfully, that the food waste disposer connected under the sink is also a product of Emerson's InSinkErator business unit.

129.   Anaheim's infringing use of Emerson's INSINKERATOR trademarks has been deliberate and willful, and has been committed with the intent to cause confusion, mistake, and to deceive and defraud the public, as well as harm the goodwill associated with Emerson's INSINKERATOR trademarks.

130.   Anaheim's acts are causing substantial injury and threaten to cause substantial injury to Emerson's trade, business reputation, prestige and goodwill.  Emerson has no adequate remedy at law and said acts will continue unless restrained by this Court.

## COUNT IX

## TRADEMARK DILUTION UNDER MISSOURI LAW

131.   Emerson incorporates by reference all of the averments set forth in Paragraphs 1-130, inclusive, with the same effect as though fully rewritten in this Count.

132.   Emerson's INSINKERATOR trademarks are distinctive as a result of Emerson's long time use of the trademarks, and widespread recognition, among other things, alleged above.

133.   Anaheim, without the consent of Emerson, is facilitating and encouraging Emerson's INSINKERATOR trademarks to be connected to food waste disposers that are not

made and sold by Emerson, thereby misrepresenting the nature, characteristics, and qualities of Emerson's INSINKERATOR brand food waste disposers.

134.     Anaheim's acts, which occurred after Emerson's INSINKERATOR trademarks became famous, have been willful and deliberate, have created a likelihood of injury to Emerson's business reputation, and are likely to cause and/or are intended to cause dilution, blurring, and/or tarnishment and to impair the distinctiveness of Emerson's famous INSINKERATOR trademarks, and thus constitute a violation of MO. REV. STAT. §417.061.

135.     Anaheim's acts are causing substantial injury to Emerson's trade, business reputation, prestige and goodwill.  Emerson has no adequate remedy at law and said acts will continue unless restrained by this Court.

<u>COUNT X</u>

<u>UNJUST ENRICHMENT IN VIOLATION OF MISSOURI LAW</u>

136.     Emerson incorporates by reference all of the averments set forth in Paragraphs 1-135, inclusive, with the same effect as though fully rewritten in this Count.

137.     Anaheim's advertising, promotion, manufacture and/or sale of food waste disposers that copy the look of Emerson's Badger® and Evolution® series disposers and that connect to Emerson's sink mount assembly displaying one or more of Emerson's INSINKERATOR trademarks on the decorative sink flange enriches Anaheim at the expense of Emerson's valuable goodwill in the INSINKERATOR trademarks.

138.     Anaheim's manufacture and sale of food waste disposers that copy the look of Emerson's Badger® and Evolution® series disposers and that connect to Emerson's sink mount assembly has conferred, and continues to confer, an unjust benefit upon Anaheim.

139.    Anaheim's acts, as set forth above, constitute unjust enrichment under the common law of the State of Missouri.  It would be inequitable for Anaheim to benefit from its unlawful acts.

140.    Anaheim's acts are causing irreparable injury to Emerson's trade, business reputation, prestige and goodwill.  Emerson has no adequate remedy at law and said acts will continue unless restrained by this Court.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Emerson respectfully requests that this Court grant the following equitable relief:

A.    Enter an Order preliminarily, and at the time of final judgment permanently enjoining Anaheim, its division, business units, agents, servants, licensees, distributors, and employees and all persons in active concert or participation with them, from manufacturing and selling food waste disposers that copy the look of Emerson's Badger® and Evolution® series disposers, copy the look of Emerson's tri-lobe sink mount assembly, or that are configured to connect to Emerson's sink mount assembly;

B.    Enter an order directing Anaheim to destroy all current inventory of the Accused Disposers;

C.    Enter an order requiring Anaheim to file with the Court and to serve on Emerson's counsel, within thirty (30) days after service of any preliminary injunction or permanent injunction issued, or within such reasonable time as the Court shall direct, a report in writing and under oath setting forth in detail the manner and form in which Anaheim has complied with the injunction.

D.    Award Emerson all damages to which it is entitled for Anaheim's unlawful acts alleged above.

29

E.      Enter an order requiring Anaheim to disgorge all profits attributable to its unlawful acts alleged above.

F.      Award Emerson punitive damages for Anaheim's unlawful and malicious acts alleged above.

G.      Award Emerson its attorney's fees and costs in this action.

H.      Grant all such other and further relief as it deems appropriate under the law, based upon the facts complained of herein and as determined by the investigation.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated:  March 16, 2012                    Respectfully submitted,

                                          HARNESS, DICKEY & PEIRCE, PLC

                                          By: _____
                                               Rudolph A. Telscher, Jr., 41072MO
                                               rtelscher@hdp.com
                                               Kara Fussner, 54656MO
                                               kfussner@hdp.com
                                               Greg W. Meyer, 59287MO
                                               gmeyer@hdp.com
                                               7700 Bonhomme, Suite 400
                                               Clayton, MO 63105
                                               Telephone:    (314) 726-7500
                                               Facsimile:    (314) 726-7501

                                          *Counsel for Plaintiff Emerson Electric Co.*

60939969.1

30